**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* the Adoption of: R.E.H.

**No. 25-332** (Ohio County CC-35-2024-A-19)

**MEMORANDUM DECISION**

Petitioners R.H. and S.H., the father and stepmother, respectively, of R.E.H., appeal the Circuit Court of Ohio County's April 22, 2025, order denying their petition for adoption by stepparent. On appeal, the petitioners argue that the circuit court erred in failing to make the child's welfare and best interests the polar star; failing to provide the child permanency; and granting Respondent K.M., the child's biological mother, a "pseudo-disposition five."[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

R.E.H. is the child of Petitioner R.H. ("the father") and Respondent K.M. ("the mother"). Prior to the initiation of the proceedings giving rise to this appeal, the child was the subject of a petition by the Tennessee Department of Children and Families based on allegations that the mother neglected the child. Those proceedings resulted in the father's designation as the child's primary residential parent and the mother being awarded visitation rights (four consecutive days of visitation each month and telephone visitation via Facetime on Mondays and Thursdays). The Tennessee court later refused to restrict the mother's visitation upon the father's motion and confirmed that the mother was entitled to "unimpeded telephone conversations with the child at least twice a week." At that time, the Tennessee Juvenile Court explained that, in order to *expand* her visitation rights beyond those already granted, the mother would be required to "file[] a petition and prove[] her case." In 2019, the mother filed a motion with the Tennessee court to adjust the parameters of her visitation with the child and for sanctions against the father. In response, the father filed motion to suspend the mother's parenting time. Before ruling on these motions, the Tennessee court transferred the matter to the Family Court of Ohio County, West Virginia. Following a status hearing in January 2020, the family court adopted the existing custody order and ordered the parties to refile any motions that were pending in the Tennessee Juvenile Court by March 1, 2020. Neither parent refiled their pending motions. However, in September 2024, the mother filed a petition for modification in the family court alleging that the father had prohibited her in-person visitation since 2020 and had been interfering with her video calls.

---

[1] The petitioners appear by counsel Gerasimos Sklavounakis. The respondent is self-represented. To protect the confidentiality of the juvenile involved in this case, we refer to the parties by their initials. *See* W. Va. R. App. P. 40(e).

Turing to the proceedings giving rise to this appeal, the petitioners filed their petition for adoption by stepparent in the circuit court the day after the mother filed her family court motion.[2] As grounds for the adoption, the petitioners alleged that the stepmother had lived with the child exclusively since 2019, was the child's psychological parent, and wanted "to formalize her relationship with the child by adopting her." The petitioners further alleged that the mother had abandoned the child "by failing to provide financial support, communicate, or visit with the minor child for a period of more than six (6) months," "had no meaningful contact or communication with the child since January 2020[,] and ha[d] not provided for the child's emotional, financial, or physical needs."

On January 13, 2025, the circuit court held an evidentiary hearing on the petitioners' petition for adoption, during which the father, the stepmother, and the mother testified. The father claimed that the mother had provided no support for the child since he took custody of her in July 2016 and that her last in-person visit with the child occurred on January 12, 2020. The father explained that, during the visit, the mother told the child that she was her mother, causing the child to look scared and uncomfortable. The father admitted that he stopped allowing the mother to visit the child after that incident without seeking court approval. The father also admitted that the mother sent him emails over the years asking to speak with the child. Next, the stepmother testified that she had been in the child's life since 2016 when she began her relationship with the father and that she had been living with the child since she married the father in 2019. She stated that her relationship with the father "revolved around the [the child]" and adopting the child had "always been the plan." Finally, the mother testified that no court had revoked her visitation rights with the child, not even temporarily, and she tried to contact the child through emails, phone calls, text messages, a public plea, and showing up at the petitioners' home in October 2024. The mother introduced e-mails that she sent to the father in December 2023 and February, April, May, and June 2024 asking for visits and phone calls with the child, but he ignored her. She explained that she did not know the petitioners' address until they filed their adoption petition despite asking for it to send the child cards and presents. Lastly, she testified that she had "been fighting [her] way out of poverty" and only recently obtained a job that allowed her to save up enough money to hire an attorney to enforce her visitation rights, explaining that she did not want custody of the child because the child was "doing better without me being the only provider for her" and "has things that I would never be able to give her."

Based on the evidence, the circuit court denied the petitioners' petition for stepparent adoption, concluding that the mother had not abandoned the child. The court found that "the record in this case is replete with evidence of [the mother]'s attempts to maintain her court-ordered visitation schedule with her daughter—all of which were thwarted by [the father]'s self-admitted conduct at stopping these visits *without court approval*." Additionally, the court noted that the father admitted to receiving "sporadic e-mails" from the mother between 2020 and the filing of the adoption petition seeking contact with the child. The court also recognized that when the mother attempted to enforce her visitation rights in family court, the petitioners filed their petition for

---

[2] After the family court set a hearing on the mother's petition for modification for October 11, 2024, it continued the hearing on the father's motion and later granted his motion to stay the family court proceedings pending the adoption proceeding.

stepparent adoption and stayed the family court proceedings. Thus, the court determined that the mother had not failed to visit or otherwise communicate with the child for six months immediately preceding the filing of the petition for adoption and that, to the extent that she did fail to communicate, the father prevented her from doing so. Finally, the court found no evidence that the mother failed to financially support the child within her means as the mother's testimony revealed that her financial condition and employment history were sporadic and insufficient to raise the child. The petitioners appeal from this order.

When considering the appeal of an order in an adoption proceeding, we review the circuit court's final order and the ultimate disposition under an abuse of discretion standard, and we review the underlying factual findings for clear error. Syl. Pt. 1, *In re Adoption of R.L.*, 249 W. Va. 89, 894 S.E.2d 871 (2023). Before this Court, the petitioners challenge the circuit court's denial of their petition for stepparent adoption.[3] The petitioners first argue that "the circuit court erred in failing to place the child's welfare and best interests as the polar star of its decision." Specifically, they assert that the circuit court improperly limited its analysis to whether the mother legally abandoned the child and failed to consider the undisputed evidence that they "provide[d] the child with greater stability, permanency, and opportunity" than the mother. We disagree.

West Virginia Code § 48-22-301(b) requires a parent's consent to or relinquishment for adoption of a minor child, except in certain circumstances. Relevant to this appeal, a parent's consent to or relinquishment for adoption of a minor child is *not* required when a court finds that "a parent . . . has abandoned the child as set forth in West Virginia Code § 48-22-306." W. Va. Code § 48-22-301(b)(2). Pursuant to that section,

> (a) Abandonment of a child over the age of six months shall be presumed when the birth parent:
>
> (1) Fails to financially support the child within the means of the birth parent; and
>
> (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

---

[3] In addition to the assignment of error addressed here, the petitioners also allege that the circuit court erred in granting the mother "a pseudo-'disposition five' period." However, the petitioners fail to cite to any authority in support of this argument. As we have stated, "issues . . . not supported with pertinent authority, are not considered on appeal." *State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) (quoting *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996)). Furthermore, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of . . . law presented . . . and citing the authorities relied on." Accordingly, we decline to address this assignment of error.

W. Va. Code § 48-22-306(a). By focusing entirely on the child's best interests, the petitioners completely ignore the statutory requirements necessary for adoption, which were not met below. Here, the circuit court properly analyzed whether the mother had abandoned the child. Indeed, its determination that the petitioners actively prevented the mother from exercising her visitation rights with the child is well-supported by the record as the father admitted that he stopped allowing the child to visit with the respondent in 2020 without court approval and that he received multiple emails from the mother seeking to exercise her visitation rights. In their reply brief, the petitioners argue that they did not prevent the mother from exercising her visitation rights. Instead, they claim that the Tennessee Juvenile Court's custody order conditioned the mother's visitation rights on her compliance with certain conditions, including drug and alcohol screenings, parenting assessments, restoration of her driver's license, and proof of stability. Thus, they contend that they were justified in withholding visitation until the mother proved her compliance. However, this contention has no basis in the record. The custody order granted the mother four consecutive days of visitation each month and phone calls at least twice each week. The custody order also outlined what the mother needed to prove to request and receive *additional* visitation rights. Critically, the mother was not requesting visitation in excess of what she was awarded, and the father never filed a petition seeking to modify the mother's visitation. Accordingly, we find no error in the circuit court's determination that the mother did not abandon the child because the petitioners prevented the mother from visiting and communicating with the child.

Next, the petitioners argue that the circuit court erred by limiting its consideration to the six months preceding the filing of the adoption petition, which they claim "exclude[ed] extensive evidence of [the mother's] unfitness."[4] In support of this argument, the petitioners rely on Syllabus Point 6 of *In re Adoption of H.G.*, 246 W. Va. 105, 866 S.E.2d 170 (2021), where this Court held that "[t]he determinative period for finding presumptive parental abandonment under West Virginia Code § 48-22-306(a)(2) (2001) is the six-month period immediately preceding the filing of the adoption petition. But a circuit court may also consider relevant conduct of a parent outside this six-month period when evaluating his or her credibility and intentions." However, the petitioners ignore our clarification that the holding did not "expand[] the statutory six-month time frame for determining whether presumptive abandonment is met." *Id.* at 114 n.40, 866 S.E.2d at 179 n.40. Here, the record shows that, in the six-month period before the petitioners filed their adoption petition, the mother attempted to communicate with the child on multiple occasions and initiated legal proceedings to enforce her visitation rights, but the petitioners interfered with all of the mother's efforts. The record also reflects that the circuit court evaluated the mother's intentions and credibility in her attempts by considering each of the parties' relevant conduct since the child was born, which is consistent with our holding in *In re Adoption of H.G.*

Finally, the petitioners argue that the circuit court deprived the child of her entitlement to permanency by denying their adoption petition. We find no merit to this argument as the mother did not challenge the father's right to continued custody of the child. Thus, the child has achieved the stability and permanency available to children of non-cohabiting parents. *See In re Adoption of Mullins by Farley*, 187 W. Va. 772, 774, 421 S.E.2d 680, 682 (1992) (explaining that denial of

---

[4] The petitioners' argument appears to conflate the mother's fitness as a parent with abandonment. We note, however, that a parent's "fitness" is not a factor for the circuit court to consider in an abandonment analysis in an adoption proceeding.

an adoption petition did not affect a child's stability because the father made no challenge to the grandparents' right to continued custody of the child and was in a weak position to do so). As such, the circuit court did not err in denying the petitioners' stepparent adoption petition.

For the foregoing reasons, we affirm the circuit court's April 22, 2025, order.

Affirmed.

**ISSUED:** June 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice H. L. Kirkpatrick
Justice James W. Flanigan